IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) ) | COMPLAINT |
| vs. | ) ) | JURY TRIAL DEMANDED |
| B.F. SAUL COMPANY, B.F. SAUL HOSPITALITY GROUP, and B.F. SAUL PROPERTY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, to correct unlawful employment practices on the basis of disability. In this action, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") seeks to provide appropriate relief to Charging Party Naila Sikander, who was employed by Defendants B.F. Saul Company, B.F. Saul Hospitality Group, and B.F. Saul Property Company ("Defendants" or "BF Saul") as an Area Sales Manager.

As alleged with greater particularity below, Defendants violated the ADA when they discriminated against Charging Party on the basis of disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and

pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Southern Division.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant B.F. Saul Company has continuously been doing business in Bethesda, Maryland.

5. At all relevant times, Defendant B.F. Saul Company has had at least 15 employees.

6. During each calendar year from 2014 through and including 2017, B.F. Saul Company has had more than 500 employees.

7. At all relevant times, Defendant B.F. Saul Company has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

8. At all relevant times, Defendant B.F. Saul Company has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

9. At all relevant times, Defendant B.F. Saul Hospitality Group has continuously been doing business in Bethesda, Maryland.

10. At all relevant times, Defendant B.F. Saul Hospitality Group has had at least 15 employees.

11. During each calendar year from 2014 through and including 2017, B.F. Saul Hospitality Group has had more than 500 employees.

12. At all relevant times, Defendant B.F. Saul Hospitality Group has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

13. At all relevant times, Defendant B.F. Saul Hospitality Group has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

14. At all relevant times, Defendant B.F. Saul Property Company has continuously been doing business in Bethesda, Maryland.

15. At all relevant times, B.F. Saul Property Company has had at least 15 employees.

16. During each calendar year from 2014 through and including 2017, B.F. Saul Property Company has had more than 500 employees.

17. At all relevant times, Defendant B.F. Saul Property Company has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

18. At all relevant times, Defendant B.F. Saul Property Company has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

19. At all relevant times, each named Defendant has functioned as an employer, or Defendants have functioned as an integrated enterprise/single employer or joint employers.

ADMINISTRATIVE PROCEDURES

20. More than 30 days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA.

21. On June 16, 2017, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

22. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

23. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

24. On August 3, 2017, the Commission issued to Defendants a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

25. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

26. B.F. Saul Company is a privately owned real estate and insurance business headquartered in Bethesda, Maryland.

27. The Hotel Division of B.F. Saul Company operates business class hotels that are branded under franchise agreements with Intercontinental Hotels Group, Marriott International, Hilton, and Best Western.

28. The Hotel Division of B.F. Saul Company is known as B.F. Saul Hospitality

Group, and is also headquartered in Bethesda, Maryland.

29. The hotel properties described in Paragraph 27 are fully owned by B.F. Saul Company, which contracts with B.F. Saul Property Company to manage the hotels.

30. B. Francis Saul, III is the President of B.F. Saul Company and B.F. Saul Property Company. As President of both companies, Saul delegates the day-to-day operations of the managed properties to a team of executive and management personnel.

31. A team of executive personnel who manage the hotel properties described in Paragraph 27 are located at B.F. Saul Hospitality Group headquarters in Bethesda, Maryland. The executive team includes high-level corporate officers including B.F. Saul Hospitality Group President Mark Carrier and Vice President of Human Resources Elizabeth (Beth) McMahon.

32. On or about December 2015, and continuing thereafter, Defendants engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. § 12112(a) and (b), by discriminating against Charging Party Naila Sikander on the basis of disability, as follows.

(a) In May 2015, Charging Party began working as an Area Sales Manager servicing two Marriott hotels that are owned, operated, and managed by Defendants.

(b) Charging Party was qualified for the Area Sales Manager job.

(c) As an Area Sales Manager, Charging Party serviced the Marriott SpringHill Suites and TownePlace Suites hotels that are located in the Dulles region.

(d) As of May 2015, General Manager Manal Hanna oversaw such operations of the Marriott SpringHill Suites hotel and General Manager Jason Suh oversaw such operations of the Marriott TownePlace Suites hotel.

(e) Defendants' Marriott SpringHill Suites and TownePlace Suites hotels are part of a group of hotels in a region that is managed by Regional and Corporate officers, including

Regional Director of Operations Tom Gates.

(f)  In June 2015, Elizabeth (Beth) McMahon began working as a B.F. Saul Hospitality Group Corporate Vice President of Human Resources at the company's headquarters in Bethesda, Maryland.

(g)  McMahon supervises Area Human Resources Directors who handle human resources matters at Defendants' hotels, including the Marriott SpringHill Suites and TownePlace Suites hotels in the Dulles region.

(h)  In December 2015, Charging Party Naila Sikander told General Manager Manal Hanna that she had been diagnosed with breast cancer.

(i)  In December 2015, General Manager Manal Hanna told her supervisor, Regional Director of Operations Tom Gates, that Charging Party had been diagnosed with breast cancer.

(j)  In December 2015, Gates told Vice President of Human Resources Beth McMahon that Charging Party had been diagnosed with breast cancer.

(k)  In December 2015, Vice President of Human Resources Beth McMahon became aware that Charging Party had taken some leave from work at certain times for reasons related to her breast cancer diagnosis and treatment.

(l)  In December 2015, McMahon instructed Area Human Resources Director Veronica Park to meet with Charging Party to discuss issues related to her breast cancer diagnosis and treatment.

(m)  McMahon told Park to give Charging Party a B.F. Saul Questionnaire that the company had prepared for Charging Party to give her treating physician, and to tell Charging Party to have her physician complete the Questionnaire and to return it to the

company.

(n)     From December 2015 through February 11, 2016, Charging Party was granted some leave to be absent from work at certain times for reasons related to her breast cancer diagnosis and treatment.

(o)     Charging Party was not absent on any work day after February 11, 2016, up to and including the day she was fired.

(p)     On January 4, 2016, Damien Pierre began working as an Area Director of Sales for Defendants' hotels in the Dulles region.

(q)     On or about January 20, 2016, Charging Party was given a B.F. Saul Questionnaire that the company had prepared.

(r)     On or about January 20, 2016, Charging Party was told to have her physician complete return to the company the B.F. Saul Questionnaire referenced in Paragraph 32(q).

(s)     The B.F. Saul Questionnaire referenced in Paragraph 32(q) stated, in part, that if Charging Party's physician did not complete and return it by January 29, 2016, Charging Party's continued employment may be in jeopardy.

(t)     The B.F. Saul Questionnaire referenced in Paragraph 32(q) stated, in part:

SpringHill Suites Dulles/B.F. Saul requests that the treating physician of Naila Sikander provide information to enable SpringHill Suites Dulles/B.F. Saul to assess whether there is a reasonable accommodation that SpringHill Suites Dulles/B.F. Saul can provide to permit Naila Sikander to perform the essential functions of her position as Area Sales Manager.

A position description is enclosed.  The information on the essential functions of the job is included in that position description.  Please consult this document in completing this form.  **Our employee has been advised that this form must be fully completed by you and returned no later than <u>Friday, January 29, 2016.</u> Failure to return the form by that day may jeopardize the Employee's continued employment.**

(Emphasis in original).

(u)     On February 8, 2016, Charging Party provided to McMahon and Park the B.F. Saul Questionnaire that her physician had completed.

(v)     In a letter dated May 2, 2016, law firm Shawe & Rosenthal, LLP ("Shawe Rosenthal") made statements to the United States Equal Employment Opportunity Commission to provide the position of B.F. Saul Hospitality Group in response to the Charge of Discrimination that had been filed against the company by Charging Party Naila Sikander.

(w)     In the letter described in Paragraph 32(v), Shawe Rosenthal said, in part, that on February 19, 2016, Park and McMahon met with Charging Party to review the completed form, and that they told her that it was unlikely they could continue her employment.

(x)     On February 19, 2016, Park and McMahon met with Charging Party to review the completed form, and they told her that it was unlikely they could continue her employment.

(y)     As of February 19, 2016, Charging Party was working full-time and she had not been absent from work on any day after February 11, 2016.

(z)     On February 19, 2016, Park and McMahon told Charging Party to have her physician complete the same B.F. Saul Questionnaire described in Paragraph 32(q) a second time, and to return another completed version to the company.

(aa)    On February 22, 2016, Charging Party provided to McMahon and Park a second B.F. Saul Questionnaire that her physician had completed.

(bb)    On February 22, 2016, Charging Party advised McMahon and Park that she was scheduled to undergo breast cancer surgery on March 8, 2016.

(cc)    Charging Party told her supervisors, McMahon, and Park that she intended to take some leave during the 60-days after breast cancer surgery to undergo and recover from surgery,

and to undergo anticipated breast cancer treatment.

(dd)    Charging Party was fired on March 1, 2016, one week before she was scheduled to undergo breast cancer surgery.

(ee)    McMahon made the decision to fire Charging Party.

(ff)    On March 1, 2016, McMahon told Charging Party that she was fired but could work through the end of that week.

(gg)    On March 1, 2016, McMahon told Charging Party that the company fired her because it would take too long for her to get better.  Charging Party told McMahon that it was too early to predict her medical condition, and otherwise reminded McMahon about various matters they had discussed, including her intention to take some leave during the 60 days following surgery that was scheduled for March 8, 2016.  McMahon said the termination decision had been made and would not be changed.

(hh)    As of March 1, 2016, B.F. Saul Hospitality Group had a Leave of Absence Policy providing, in part, "The Company provides leaves of absence without pay for family & medical leave, to satisfy military obligations, or to handle personal and compelling circumstances."

(ii)    As of March 1, 2016, B.F. Saul Hospitality Group also had a Personal Leave policy providing, in part, "After one year of employment, personal leave without pay may be granted for personal or emergency reasons for up to six (6) months."

(jj)    As of March 1, 2016, B.F. Saul Hospitality Group also had an Extended Leave policy providing, in part, "Extended leave without pay may be granted at the Company's discretion at the conclusion of an original leave."

(kk)    On March 1, 2016, Charging Party talked to Gates, Hanna, and Pierre about her termination and they said the decision had been made by Human Resources and there was

nothing they could do about it.

(ll) On March 1, 2016, Charging Party called the President of B.F. Saul Hospitality Group, Mark Carrier. Charging Party explained the circumstances and asked Carrier to help her. Carrier said he would consider the situation and get back to her, but he did not contact her again.

(mm) On March 2, 2016, Charging Party reported for work.

(nn) On March 2, 2016, McMahon and others came to Charging Party's office and told her that she needed to leave the building and not return. Charging Party asked why she had to leave and said that she did not understand why she had been fired. She asked for a termination letter explaining why she had been fired. McMahon and the others did not answer Charging Party's questions and did not give her a termination letter. Charging Party was escorted out of the building.

(oo) Defendants engaged a temporary worker to perform Charging Party's job, and the temporary worker began working on March 14, 2016, only ten (10) days after what was supposed to be Charging Party's last day.

(pp) In mid-July 2016, Defendants hired someone to replace Charging Party on a permanent basis.

(qq) After hiring Charging Party's permanent replacement, the company allowed the temporary worker referenced in Paragraph 32(oo) to continue working for another month until August 14, 2016.

33. Charging Party Naila Sikander is a person who is covered by the protections of the ADA.

34. Defendants discriminated against Charging Party Naila Sikander in violation of Section 12112(a) and (b) of the ADA by engaging in prohibited conduct, including but not

limited to: subjecting her to disparate terms and conditions because of disability; taking adverse employment action against her because of disability, including terminating her employment; failing to make reasonable accommodations to known physical or mental limitations; and/or denying her employment opportunities based on the need to make reasonable accommodations to known physical or mental impairments.

35.     The alleged legitimate non-discriminatory reasons for Defendants' conduct are a pretext for unlawful discrimination.

36.     The effect of the practices complained of in Paragraphs 32-35 has been to deprive Charging Party Naila Sikander of equal employment opportunities and otherwise adversely affect her status as an employee on the basis of disability, in violation of the ADA.

37.     The unlawful employment practices complained of in Paragraphs 32-35 were intentional.

38.     The unlawful employment practices complained of in Paragraphs 32-35 were done with malice or with reckless indifference to the federally protected rights of Charging Party Naila Sikander.

PRAYER FOR RELIEF

39.     Wherefore, the Commission respectfully requests that the Court:

A.      Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: discriminating against employees because of disability; maintaining a bias against disabled persons based on myths, fears, and stereotypes; operating without mechanisms that require managers to engage in a good-faith interactive process to identify the need, if any, for accommodations, and which prevent managers from taking adverse action

against employees because of disability; failing to engage in the interactive process in good faith; and creating and sustaining an environment in which human resources personnel, management, and executives collaborate in an effort to create justifications to terminate the employment of persons in protected classes for pretextual reasons and without substantial and effective review.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Charging Party Naila Sikander.

D. Order Defendants to provide compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendants to provide compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Defendants to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

    Respectfully submitted,

    U.S. EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
    Washington, D.C.

    JAMES L. LEE
    Acting General Counsel

    GWENDOLYN Y. REAMS
    Associate General Counsel

           /s/
    DEBRA LAWRENCE
    Regional Attorney, Philadelphia District Office

           /s/
    KATE NORTHRUP
    Supervisory Trial Attorney, Baltimore Field Office
    kate.northrup@eeoc.gov
    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
    10 S. Howard St., 3rd Floor
    Baltimore, MD 21201
    Tel. (410) 209-2722